Matter of the Habeas Corpus of David YOUNG, Petitioner.

No. A–12576.

Criminal Court of Appeals of Oklahoma.

March 12, 1958.

Rehearing Denied May 7, 1958.

John G. Hervey, Oklahoma City, Glenn O. Young, Sapulpa, for petitioner.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Clyde Patrick, Co. Atty., Creek County, Sapulpa, for respondent.

BRETT, Presiding Judge.

This is an original proceeding in habeas corpus brought by petitioner, David Young, wherein he seeks relief from a judgment and sentence of ten days in jail on a charge of direct criminal contempt of court. The contempt was committed in the District Court of Creek County on January 30, 1957. No appeal was taken from the judgment and sentence, but instead, relief by prohibition was sought in the Supreme Court of the State of Oklahoma, and on denial of jurisdiction therein, by certiorari in the United States Supreme Court, wherein jurisdiction was also denied. The foregoing procedure was at the election of the petitioner. It has been called to our attention without denial that the petitioner stated in the Supreme Court: "That relying upon cases cited and affirmed in Seay v. Howell, supra, (311 P.2d 207) petitioner herein has waived and abandoned all effort to obtain relief by appeal to the Criminal Court of Appeals; * * *" In any event, during the pursuit of the remedy sought in the state Supreme Court and the United States Supreme Court, petitioner's right to appeal was permitted to expire. It is thus apparent that the petitioner herein voluntarily elected to pursue the hereinbefore remedies and deny himself relief by right to review on appeal in this Court.

In Oklahoma, contempt proceedings are controlled by the provisions of the Constitution and statutes as follow. Art. II,

Sec. 25, Okl.Const., provides, in part, as follows in relation to direct criminal contempts, exclusive of indirect contempts and the procedure provided for therein:

"The legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: * * * In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

Pursuant to the power thus vested in the legislature, the courts were given power to punish for contempt as follows, as set forth in 21 O.S.1951 § 565:

"* * * Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, * * * and may be summarily punished as hereinafter provided for."

21 O.S.1951 § 566 provides the punishment for contempt may be either fine or imprisonment. 21 O.S.1951 § 568 provides the substance of the offense shall be set forth in the order for confinement and made a matter of record in the court. The legislature saw fit to limit the inquiry in contempt cases on habeas corpus by the provisions of 12 O.S.1951 § 1342, which reads, in part, as follows:

"No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following: * * *

"Third. For any contempt of any court, officer or body having authority to commit; but an order of commitment as for a contempt, upon proceedings to enforce the remedy of a party, is not included in any of the foregoing specifications."

In construing the foregoing section of the statutes, Justice Arnold, speaking for the Oklahoma Supreme Court in Ex parte Hall, 190 Okl. 231, 122 P.2d 1005, 1006, said:

"\* \* \* unless the judgment of commitment for contempt is void habeas corpus will not lie to review same. Upon an application for a writ of habeas corpus after commitment for contempt this court will examine only the trial court's power and authority to act; if it has jurisdiction to render the particular judgment the writ will not issue. Ex parte Bighorse, 178 Okl. 218, 62 P.2d 487; Dancy v. Owens, 126 Okl. 37, 258 P. 879."

That pronouncement is in keeping with the rules announced by this Court. In Deskins v. State, 62 Okl.Cr. 314, 71 P.2d 502, 507, it is stated:

"The constitutional provision and the statute merely affirm a pre-existing power. Without the power, courts could not fulfill their responsible duties for the good of the public.

"No one doubts either the right or duty of a court to punish as contempts disorderly and contumelious behavior, breaches of the peace, or any willful disturbance in its presence. The right rests on the necessity that was found to exist to enable courts *to administer the law without interruption by improper interference, and to maintain their own dignity*. So indispensible is this power that its just exercise, so far as it may be necessary for the due protection of the courts, has never been questioned. (Emphasis supplied.)

"In cases of direct contempt under the constitutional and statutory provisions, the contemner being present in court, neither formal charge against him in writing nor process is required. It is only required that punishment shall not be imposed until the contemner shall have an opportunity to be heard. Since the court acts upon view and hearing, no witness need be sworn nor formal evidence taken. The court in its discretion renders judgment imposing such punishment as it may deem proper within the limits prescribed by the statute. No record is made other than the judgment, in this, as the statute provides, 'The substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court.' Section 1959, St.1931 (21 Okl.St.Ann. § 568). This provision can only mean that the order of confinement must contain a recital of those facts which make it a direct contempt, and is mandatory in its terms. Ex parte Dawes, 31 Okl.Cr. 397, 239 P. 689; Lynn v. State, 38 Okl.Cr. 313, 260 P. 1069."

In Ex parte Murray, 54 Okl.Cr. 437, 23 P.2d 220, it was held:

"This court will interfere on habeas corpus in contempt proceedings only when it appears that the action of the lower court punishing for a contempt was without authority of law because of a want of jurisdiction or was without due process of law and the commitment void, and the burden is on petitioner to show that it is void."

State ex rel. Attorney General v. Davenport, 125 Okl. 1, 256 P. 340. In Ex parte Thompson, 94 Okl.Cr. 344, 235 P.2d 955, 957, a contempt case, we said:

"It is well settled that habeas corpus will not lie to correct purely procedural errors, and is not designed to interrupt orderly administration of laws by a competent court acting within limits of its jurisdiction. Ex parte Meadows, 70 Okl.Cr. 304, 106 P.2d 139.

"This court has many times held that in habeas corpus we will not look beyond the sentence of any court of competent jurisdiction as to errors of law on questions over which the court had jurisdiction, and that such writ of habeas corpus cannot be used to take the place of an appeal, but will be limited to cases where the order of commitment is void. In re Wright, 75 Okl. Cr. 400, 132 P.2d 351; Ex parte Tollison, 73 Okl.Cr. 38, 117 P.2d 549; Ex parte Small, Okl.Cr.App., 221 P.2d 669; Ex parte Williams, 90 Okl.Cr.

150, 211 P.2d 542; Ex parte O'Hara, 89 Okl.Cr. 250, 206 P.2d 592.

"In Ex parte O'Hara, supra, it was held: 'Inquiry in habeas corpus is limited to the questions, did the trial court have jurisdiction of the subject matter, of the petitioner's person and authority under the law to pronounce the judgment and sentence rendered?'

\* \* \* \* \* \*

" \* \* \* this court in habeas corpus will only examine the judgment roll to determine whether the order which was issued was within the jurisdiction of the court, and will not review the record and examine the facts to see whether the facts in evidence before the court were sufficient to sustain the order which was made. The remedy for a person allegedly injured under such a state of the record is by an appeal to the proper appellate court, who will examine the facts and determine whether an error of law was made in the entry of the judgment."

The judgment and order of commitment as entered by Judge Hughes must be measured by the foregoing principles. It reads: "Now on this 30th day of January, 1957, being one of the regular days of the January 1957 Term of the District Court of Creek County, Oklahoma, and with eleven (11) members of the Grand Jury in the Jury Box awaiting the qualifications of additional grand jurors called for the purpose of replacing a grand juror, one Kenneth Henderson, who on the 29th day of January, 1957, was discharged from the Grand Jury because of ill-health, and while the District Court was in the process of hearing the qualifications and exceptions of the jurors for the purpose of selecting a substitute juror for the one discharged, Mr. David Young, purporting to represent parties, attempted to have the judge of said Court hear an Application to Disqualify said Judge from presiding over said Grand Jury *(which had not been filed with the Court Clerk)*, together with the service of Notice of an Application for a Writ of Mandamus to the Supreme Court to prohibit said Judge from presiding further with said Grand Jury, and having been advised by the Court that he was not a party to any law suit or cause of action, and being advised by the Court that he had no standing in the Grand Jury matter to attempt or even file such pleadings, particularly at that time, since the Grand Jury itself had been in session for a period from January 21st, 1957, and that the Court would not hear the same at that time. (Emphasis supplied.)

"Whereupon said David Young attempted to make a record with the Court Reporter for what purpose the Court did not know, and after having been repeatedly advised to refrain from his activities and to quit interfering with the process of the Court in an attempt to re-empanel said Grand Jury, he was asked by the Court whether or not he had any legal reason to state to the Court why he should not be found in contempt of Court for disturbing and disrupting the orderly process of the District Court of Creek County, which question was asked the said David Young repeatedly, and to which he gave no satisfactory answer, nor did he state any reasons, legal or otherwise, why he should not be found in contempt of Court.

"Whereupon, the Court found the said David Young guilty of willful and contumpacious contempt of the District Court of Creek County, Oklahoma, and thereon assessed the penalty therefor at ten (10) days in the County Jail, and ordered the Sheriff of Creek County, Oklahoma, to take custody of said David Young until he had purged himself of his contempt."

 Under the foregoing provisions of law, we are limited in our inquiry to testing the judgment by its recitals. All contentions not pertinent thereto are otherwise irrelevant. The elements of and when jurisdiction attaches to the person in contempt are set forth in State ex rel. Attorney General v. Davenport, supra, 256 P. at page 345, quoting with approval from 2 Bailey on Habeas Corpus 235:

"If the court has jurisdiction of con-tempts, and the matter is alleged as in contempt of that court, and jurisdiction of the person is obtained, then the court possesses all the elements of jurisdiction to authorize it to proceed and determine all other questions in the case, including the sufficiency of the complaint or charges, and the question of law relevant thereto."

At page 346 of 256 P. with reference to invoking jurisdiction of the subject matter, it was said:

"The disobedience of its order by the plaintiff gave the court jurisdiction of the subject-matter and called upon it to determine whether a contempt had been committed or not. The right to adjudicate upon this question did not depend upon the fact whether the plaintiff was guilty of a contempt, but whether a case had been made calling for an adjudication upon that question."

Church on Habeas Corpus 469, § 340. Under the judgment and order of commitment herein, the following things are evident: The trial court was engaged in the process of impaneling a grand juror to take the place of one excused for illness. The petitioner there appeared without any pleading pending before the trial court and disrupted the said proceedings by attempting to have the judge disqualified from presiding over said grand jury proceedings. It appears from the said judgment that the petitioner was not a party to any law suit or cause of action and was advised that he had no standing in the grand jury matter to file such a pleading, particularly at that time, since the grand jury had been in session for nine days, and the trial court, under those conditions would not hear the same. We are of the opinion that the trial court, under these conditions, had nothing properly before it for consideration.

It is fundamental that if the petitioner desired to be heard on said matter of disqualification, he should have proceeded by first filing the matter with the Clerk. The judgment supports the proposition that the petitioner was admonished to refrain from his activities and interfering with the court's process in regard to the grand jury. Instead of refraining therefrom, he continued to interfere with the grand jury proceedings and attempted to make a record on a matter which was not properly before the court. The judgment further discloses that although repeatedly admonished to desist, the petitioner persisted in pressing the matter. It then appears the court invoked its jurisdiction in contempt against the petitioner for disrupting the orderly processes of the grand jury impaneling proceedings and afforded the petitioner the right to be heard. The petitioner, it appears, did not make satisfactory answer or state any legal reason why he should not be found in contempt and he was adjudged so to be. Under this state of the record, and the foregoing authorities, we can reach no other conclusion than that the trial court had all the essentials of jurisdiction of the person and the subject matter and the right to proceed to hear the same in a summary manner for direct contempt. Thereafter, the trial judge set forth the substance of the findings in the judgment and order of commitment, and in so proceeding, the court fulfilled the legal requirements of due process of law.

The petitioner's self-imposed restrictions by waiving his right of appeal and pursuing habeas corpus permits us to make no further inquiry. Had this matter been presented by appeal, the enlarged scope of inquiry would have opened those avenues of relief incident thereto. The petitioner circumscribed the possibilities of relief by his own unfortunate election.

For the reasons herein set forth, the writ is denied.

POWELL and NIX, JJ., concur.