Frederick D. Dugan, J.
The State Comptroller has twice rendered his opinion that the Yates County Court stenographer is entitled to payment of the fees prescribed by law for preparation of transcripts in the above matter and in addition to her salary fixed by the County Legislature. (Comptroller’s Opn No. 76-838 and No. 76-838-A.)
The respondent County Attorney has advised the respondent County Treasurer that payment was not required. The Yates County Legislature by Resolution No. 254-76 has directed the Treasurer not to pay the transcript charges until payment is required by "final order of a Court of competent jurisdiction”.
The CPL mandates that when an appeal is taken by a defendant, the criminal court in which the sentence being appealed was imposed must direct the stenographer to make and file with the court two transcripts of the stenographic minutes of the proceedings constituting the record on appeal. (CPL 460.70; People v Shenandoah, 81 Misc 2d 316.)
The statute expressly provides the transcript expense is a *743 county charge payable to the stenographer out of the court fund, or out of the juror’s fund or out of any other available fund, upon the certificate of the Criminal Court Judge. (CPL 460.70.)
The transcript charges are set by law at 60 cents a page. There are two folios per page (22 NYCRR 1027.3 [c]) and the charge is 30 cents per folio (CPLR 8002).
After the defendant’s conviction for manslaughter in the second degree, he was sentenced on August 5, 1975. The County Clerk advised the court stenographer of the timely filing of the notice of appeal and requested her to make two transcripts of the stenographic minutes of the trial conducted by the court from June 10, 1975 to July 2, 1975, involving some 32 witnesses. A single transcript totaled 1,141 single-spaced pages. The two typed transcripts were completed June 9, 1976, and filed with the County Clerk on June 18, 1976.
On June 16, 1976, the court certified its approval on the voucher of Debra C. Miller, the court stenographer, and it was forwarded to the County Treasurer. That voucher for $1,369.20 has not been paid although there has been extensive correspondence as to legal basis for the charge and its calculation and opportunity for two inquiries to the Comptroller.
The County Law provides that each court stenographer shall be entitled to retain to his use, in addition to the amount fixed by the County Legislature for regular services, the fees and other compensation prescribed by law or certified by a presiding Judge pursuant to law, for transcribing and furnishing a copy of the minutes, testimony or exhibits taken or produced, in any civil or criminal action or proceeding. (County Law, § 205; see, also, Judiciary Law, § 302; County Law, § 703-a.)
The State Comptroller cited section 205 of the County Law in each of his opinions to the county. The county’s argument then and now is that the court stenographer is a county employee whose position is covered under the Civil Service Employees’ Association contract which provides for her rate of pay and hours of work.
The transcripts here were typed during her regular working hours and with materials, office space and equipment provided by the county.
The county urges that if the work of the stenographer in preparing these transcripts is a charge against the county, it *744 has paid the charge under the Civil Service Employees’ Association agreement; that the county is required under the Public Employees’ Fair Employment Act (Civil Service Law, art 14) to enter this agreement with its employees, including this stenographer, and that payment to her of these transcript charges under section 205 of the County Law would be a violation of that agreement. It speculates that giving additional compensation to one employee might result in additional compensation having to be given to other employees covered by that agreement.
Counsel allows that the language of section 205 of the County Law, "shall be entitled to retain to his own use, in addition to the amount fixed * * * for regular services,” might be the basis to pay compensation for services performed in addition to or outside the court stenographer’s regular services, but notes that the employment agreement provides for overtime compensation.
The county’s position is patently incorrect. To hold otherwise means the county could abrogate the statutory law of the State of New York by contract. It is clear that the State Legislature intended the court stenographer to be paid transcript charges "in addition” to her salary or wages.
As noted by the Comptroller, this payment for the transcripts is not an increase in the court stenographer’s compensation under the employment agreement because the transcript payments are required by statute and "in addition” to such compensation. (Comptroller’s Opn No. 76-838-A.)
It is held that section 205 of the County Law mandates the county’s payment of the 30 cent folio charge to the court stenographer in addition to the salary or wage paid for regular services under the employment agreement..
Further, the voucher here is a charge on county funds to be paid by the Treasurer without further approval or audit. (People ex rel. Rea v Prendergast, 221 NY 582.)
The statute specifies the expense of such transcripts is a county charge payable to the stenographer out of the court fund, or out of the juror’s fund or out of any other available fund, upon the certificate of the criminal court. (CPL 460.70.)
The County Court thus has the power to certify the amount to be paid for the transcripts and the court’s certificate of approval takes the place of an audit or other approval which might otherwise fall upon another official. (People ex rel. *745 Cantor v Craig, 202 App Div 840.) The Treasurer’s duties here are purely ministerial and are limited to paying the voucher as presented.
These proceedings are brought on by the court’s order to show cause based upon a copy of the voucher and the Comptroller’s letter of August 27, 1976, with appropriate recitals, personally served upon the respondent County Treasurer and the respondent County Attorney, why an order of this court should not be given that the Treasurer pay the voucher of the court stenographer in the above matter in the amount of $1,369.20 as approved by the court on June 16, 1976, without further approval or audit and for such other and further relief as may seem just and proper in the premises.
Respondents by their "Demand” move to dismiss these proceedings upon the grounds that: (1) this court lacks jurisdiction; (2) there is no statutory authority for the issuance of the order to show cause; (3) there is no petition or affidavit to which respondents may answer to defend this matter; (4) the court stenographer is a necessary party not cited or before the court; (5) this relief is contemplated under CPLR article 78 and the proper jurisdiction is the Supreme Court; and (6) this court should disqualify himself, as the Judge who presided at the Criminal Trial and approved the voucher.
Under the inherent powers doctrine a court has all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court is, therefore, it has the powers reasonably required to act as an efficient court. Inherent judicial powers derive not from legislative grant or specific constitutional provision, but from the fact it is a court which has been created, and to be a court requires certain incidental powers in the nature of things. (Carrigan, Inherent Powers of the Courts, National College of the State Judiciary, Reno, Nevada [1973].)
Under the constitutionally mandated separation of powers, the three traditional branches of government — executive, legislative and judicial — are to be separate, co-ordinate and equal with each free to govern, manage and administer the business in its own sphere without restriction, supervision or interference by the other two branches. In order to effect "check and balance” the courts must have inherent powers.
*746 Here, this court has the inherent power reasonably required to perform efficiently its judicial function to carry out the statutory mandate of CPL 460.70 and section 205 of the County Law in regard to approval and payment of these transcript expenses.
Jurors are regularly admonished that they must apply the law of the State as given or charged to them by the court, whether or not they agree with it and the corollary is that the court must be bound by the policy of the State as expressed in the law. So, too, the executive and the legislative functions of the county.
These proceedings are thus within the jurisdiction of the court to efficiently perform its function under these statutes and need no statutory authority, nor are they limited by alternative remedies available in other courts, such as mandamus (CPLR art 78), declaratory judgment or a debt action. (Carrigan, Inherent Powers of the Courts, National College for the State Judiciary, Reno, Nevada [1973], p 11.) This is the most direct method of addressing the issue.
Return of the show cause order before this court avoids suit before another court. Who is to pay the attorney for the court in such an action? These proceedings avoid that expense and the delay in the determination of this court’s duties under CPL 460.70 which would be involved in proceeding before other forums.
It also avoids the delay and unfairness of requiring the court stenographer to sue her claim against the county in another court, particularly a burden here where the statutes so specifically lay out the basis for her charge and ordain the procedure for its payment.
These proceedings are clearly the burden and responsibility of this court to do its work and, of course, respondents are still afforded the remedy of appeal from the determination in this proceeding after an opportunity for a full hearing here.
Contemplating the clear language of these statutes, the court should not disqualify itself from fulfilling its duty and responsibility to apply the law to the facts here particularly within the court’s personal knowledge and that of the respondents after the extended communications on this matter.
Upon the return of the order to show cause, the court carefully narrated the history of this claim, received the voluminous correspondence, opinions and resolutions in evi *747 dence, cited the applicable statutes and case law and afforded the respondents the opportunity to offer proof and to be heard.
The facts to be elicited from the court stenographer appear to be uncontested, and, in any event, respondents had the right to subpoena that court stenographer (who has since resigned) to testify.
Respondent’s motions and each of them are denied.
The court ratifies, adopts and confirms its certification and approval of the voucher of June 9, 1976, upon the foregoing, and certifies the approval of that voucher in the amount of $1,369.20 to the Yates County Treasurer for payment without further approval or audit, together with interest at the rate of 6% per annum from the 16th day of June, 1976, to the date of payment.
The court now orders the Yates County Clerk to file and enter a judgment that the respondent Treasurer of the County of Yates pay to Debra C. Miller as Court Reporter I of the Yates County Court, from the funds of Yates County, the sum of $1,369.20, together with interest thereon at the rate of 6% per annum from June 16, 1976, without costs; the judgment to be a lien upon the moneys of the County of Yates and should the same with interest not be paid and proof thereof filed with the Yates County Clerk within 30 days from the entry of said judgment, said Yates County Clerk is to issue an execution thereon to the Yates County Sheriff, who shall levy upon the moneys of the County of Yates for said amount and interest and such fees and costs as the Sheriff shall be entitled to and then remit said amount, less said fees and costs to which he is entitled, to Debra C. Miller, Court Reporter I, and file satisfaction thereof.