**Charles C. HARBER, Petitioner,**

v.

**Ronald SHAFFER, District Judge, Respondent.**

No. 70294.

Supreme Court of Oklahoma.

April 26, 1988.

As Amended April 27, 1988.

Carl A. Barnes, Tulsa, for petitioner.

John Jarboe, Tulsa, for respondent.

MEMORANDUM OPINION

RAPP, Special Justice.[*]

The petitioner, Charles C. Harber, seeks application of criminal statutory sentence reduction credits to his present period of

---

**\*** RAPP, Special Justice (appointed for SIMMS, J., who disqualified).

confinement for civil indirect contempt. We, after assuming jurisdiction, deny.

This matter comes before us because the petitioner, Harber, refused to obey an order of the trial court issued for the benefit of another party. Harber was, after refusal, subsequently cited for contempt, tried by jury and determined to be guilty of *civil indirect contempt*. The trial court thereafter ordered Harber to be confined for six months [1] and pay a fine of five hundred dollars. In its Order of Commitment the trial court added the words "flat time" to the previously imposed confinement period of six months. The addition of the words "flat time" [2] would effectively deny Harber the benefits of statutory criminal sentence reduction credits,[3] if such credits were applicable to his confinement. Harber seeks relief from this court by a Writ of Mandamus requesting the words "flat time" be stricken from the Order of Commitment and that he be credited with the statutory time reduction credits provided by Title 57 in the determination of total chronological time to be served by a prisoner.

This action originated as a private matter between individuals seeking civil relief. It was not a criminal action brought by public authorities for correction of an offense committed against the state.

Harber, by his refusal to obey the trial court's order issued for the benefit of a third party, the validity of which he does not here question, started the chain of events culminating in his confinement and today's decision.

It is too well known to require citation of authority that a court, upon a party's refusal to obey its order, may, in an attempt to enforce its order for the benefit of a third party, issue a citation for indirect contempt. The court, after a hearing, can order a trial of the matter.[4] If the party is found guilty of failing to obey the court's order, he is then guilty of an indirect civil contempt, *Flathers v. State*, 125 P. 902; *Ex Parte Stephenson*, 89 Okl.Cr. 427, 209 P.2d 515 (1949). Civil contempt is distinct from criminal contempt.[5] This distinction has been recognized almost from statehood, *Ex Parte Gudenoge*, 100 P. 39 (Okla.Cr.1909).

After a party has violated the court's order, been tried and found guilty of a civil indirect contempt, the court then has the inherent power to enforce its order. This enforcement is both coercive and remedial in nature. *Shillitani v. U.S.*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).[6] Acting under this power, the court must imprison the violator in a municipal or city jail [7] for a time certain [8] with the clear understanding that the violator may be released at any time upon his voluntary compliance with the court order he initially refused to obey.[9]

■ Under these conditions, the court order committing the violator to jail is executory—it is not punitive. *Flathers*. The

---

**1.** The record here is not clear, but it appears the trial court sentenced Harber under 21 O.S.Supp. 1984 § 566, which states:

> Unless otherwise provided for by law, punishment for direct or indirect contempt shall be by the imposition of a fine in a sum not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail not exceeding six (6) months, or by both, at the discretion of the court.

**2.** "Flat time," as used in the argot of the criminal sphere of the law, conveys a distinct and clear message to the person in charge of a prisoner's confinement that the prisoner's term of confinement is to be served as imposed by the court without the benefit of statutory time reduction allowances provided in criminal sentences for work, blood donations, etc. *See* 57 O.S.1981 §§ 20, 65.

**3.** 57 O.S.1981 §§ 20, 65.

**4.** Art. 2 § 25, Oklahoma Constitution, guarantees a jury trial in such matters.

**5.** Direct contempt is sui generis. *Sullivan ·v. State*, 419 P.2d 559 (Okl.Cr.1966).

**6.** *See also Ex Parte Robinson*, 19 Wall 513, 514, 19 L.Ed. 205 (S.Ct. 1873), stating, "The power to punish for contempt is inherent in all courts and existence is essential to the preservation of order in judicial proceedings."

**7.** *Brown v. State*, 209 P.2d 715, 720 (Okla.Crim. App.1949). *See* Ricketts, Indirect contempt in Oklahoma, 27 Okla.L.R. 213.

**8.** This period must be definite. *See* Ricketts, *supra*, note 68.

**9.** *See* Rickets, *supra*, note 67.

order of commitment is coercive—it is not punitive. It is singularly designed and intended to force the violator's compliance with the court's order.

Under these conditions, incarceration for civil indirect contempt may continue only as long as the violator chooses continuous disobedience to the court's order or until the time period established by the court has been served. It is the violator's ability to end the imprisonment by compliance that is the distinguishing factor between civil contempt and that of a criminal contempt or crime. In the criminal contempt or criminal act, the sentence of imprisonment imposed for the "crime" must continue until the pronounced sentence is completed. A person serving a sentence for a criminal contempt or act is by statute allowed credit upon his sentence,[10] which can shorten the imprisonment.

While "contempt" proceedings are an inherent power of the court to enforce its orders, *Shillitani,* this power may be limited by constitution or statute. However, in Oklahoma, neither the Constitution, Art. 2 § 25, nor the statute (the act in which it appears) specifically defines "contempt" as a crime.[11] That statutes involving contempt have been placed in the statutory title on prisons is not controlling. *See WRG Construction Co. v. Hoebel,* 600 P.2d 334 (Okla.1979); *Green v. Green,* 309 P.2d 276 (Okla.1957).

■ Title 57 O.S.1981 § 65, providing credits for prisoners "convicted of a crime," is hence inapplicable in these proceedings.

■ We here emphasize Harber's imprisonment is for the civil offense of indirect contempt. He was not convicted of a crime, nor was he sentenced to serve a period of incarceration for a statutorily stated criminal act or offense which would or could constitute a crime. Notwithstanding the erroneous use of the word "crime" in the Judgment and Sentence, plaintiff Harber was imprisoned for Indirect Contempt of Court rather than any criminal act. The trial court sentenced him to an executory remedial sentence resulting from his failure to do an act ordered by the trial court. Harber can terminate his imprisonment at any time he *chooses* to obey the trial court's order.

The trial court is hereby directed to cause the Commitment for Punishment of Charles C. Harber in C–77–69 to be conformed to the Judgment and Sentence of the District Court of Tulsa County by striking the words "flat time" from said commitment. The addition of the words "flat time" are an impermissible addition of a prosecutorial nature in a civil matter *not* involving any crime.

■ Harber is not, while being confined for civil indirect contempt, entitled to credits earned during confinement under criminal statutes of this state. To hold otherwise would constitute and condone an impermissible infringement of the legislature abridging the power of the court to enforce its own orders.

DOOLIN, C.J., and LAVENDER, ALMA WILSON and SUMMERS, JJ., concur.

HARGRAVE, V.C.J., concurs in result.

HODGES, OPALA and KAUGER, JJ., dissent.

OPALA, Justice, with whom HODGES and KAUGER, Justices, join, dissenting.

The court withholds today from a person imprisoned for indirect "civil" contempt of court the benefits provided in 57 O.S.1981 § 65.[1] I would hold that *all* persons con-

---

10. *See supra,* footnote 3.

11. But *see* 21 O.S.1981 § 26. This section states: A criminal act is not the less punishable as a crime because it is also declared to be punishable as a contempt.

1. The terms of 57 O.S.1981 § 65 are:

"Any person in this state convicted of a crime, who is serving time as a prisoner in the county jail of any county in the State of Oklahoma as a, result of said conviction of crime, shall be entitled to receive five (5) days credit for every four (4) days' time in said county jail provided said prisoner shall have obeyed the rules and regulations promulgated by the

fined in jail under a commitment for contempt—direct or indirect, civil or criminal—are entitled to the credit prescribed in 57 O.S.1981 §§ 20 [2] and 65.

Just as Oklahoma repealed common law crimes [3] so has she abolished *all* common law forms of contempt.[4] By force of this State's fundamental law,[5] the latter transgressions are subject *solely* to constitutional and statutory regulation.[6] Power withheld from the judiciary by an explicit provision of the Constitution may not be claimed as "inherent". Inherent power, whose use is *limited* to that which is declared *essential* to a court's capability for the discharge of its constitutionally mandated mission, always *must* be derived from the Constitution *alone*. While it need not be either expressed or even implied, it is *never* available for invocation if its exercise is *explicitly prohibited* by the State's supreme law.[7]

Statutory law makes *no* distinction between civil and criminal contempt. That divisional scheme comes from judicial resurrection of common-law gloss.[8] Even if its espousal was warranted for application elsewhere in our jurisprudence, the civil/criminal contempt dichotomy is strangely out of place in today's case. The Legislature did not see fit to preserve it in fashioning the range of penalty that may be imposed. Legislative prescription for punishment of contempt does not allow the judiciary to single out *incarcerated civil contemnors* for less favorable treatment than that which is to be accorded any other subclass sentenced under the terms of 21

---

sheriff in charge of said county jail in a satisfactory manner. Each prisoner shall also, in addition thereto, be entitled to a deduction of three (3) days for each pint of his blood he donates during his first thirty (30) days of confinement in the county jail, and to five (5) days for each pint of his blood he donates during any sixty-day period thereafter to the American Red Cross or to a hospital approved for such purpose by the sheriff. And the sheriff of said county is hereby authorized to order said credit to be given to said prisoner on the records of the court out of which said conviction is had."

2. The terms of 57 O.S.1981 § 20 are:
"Every county, city or town convict in this state, whether required to work upon the public highways of such county, city or town, in accordance with the laws of this state, or merely confined in the county, city or town prison, shall receive credit upon his or her fine and costs of One Dollar ($1.00) for each day so confined in prison, or worked upon the public highways, rock pile, or rock crusher, or public work; provided that those prisoners or convicts doing and performing the most efficient work and making the best prisoners, shall be entitled to an additional credit of one (1) day for every five (5) days of work, the guard or custodian of such prison to determine at the end of each five (5) days of such imprisonment whether or not such prisoner is entitled to such credit, and to make a record of such decision and notify the prisoner of the same."

3. 21 O.S.1981 § 2.

4. See *Fulreader v. State,* Okl., 408 P.2d 775, 779 [1965]; *Best v. Evans,* Okl., 297 P.2d 379, 381 [1956] and *Seay v. Howell,* Okl., 311 P.2d 207, 209 [1957].

5. The terms of Art. 2, § 25, Okl. Const., are: *"The legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt:* Provided, that any person accused of violating or disobeying, when not in the presence of hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the State shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given." [Emphasis supplied.]

6. Contempts of court in Oklahoma are governed by constitutional and statutory provisions, and not by common law. *Best v. Evans, supra* note 4; *Seay v. Howell, supra* note 4; *Smith v. State ex rel. Raburn,* Okl.Cr., 536 P.2d 976, 979 [1975] and *Deskins v. State,* 62 Okl.Cr. 314, 71 P.2d 502, 503 [1937].

7. *Ratzlaff v. State,* 102 Okl. 263, 229 P. 278, 279 [1924]; In re Integration of State Bar of Oklahoma, 185 Okl. 505, 95 P.2d 113, 115 [1939]; *Best v. Evans, supra* note 4 at 381; *Seay v. Howell, supra* note 4 at 209; *Hopkins v. Barnhardt,* 223 N.C. 617, 27 S.E.2d 644, 646 [1943]; *State v. Superior Court,* 78 Ariz. 74, 275 P.2d 887, 889–890 [1954]; *People v. Little,* 89 Misc.2d 742, 392 N.Y.S.2d 831 [1977].

8. Goldfarb, *The Contempt Power,* pp. 45–61 [1971].

O.S.Supp.1984 § 566.[9]

Although in Oklahoma contempt of court is classified as *sui generis*,[10] the penal code's provisions for punishment of contempt—*direct and indirect, civil and criminal*—bear the unmistakable attributes of a *penal sanction.* For purposes of jail-time computation, *all* convicted contemnors incarcerated in conformity to the terms of § 566 must stand on equal footing and receive like treatment, *regardless* of the verbal garb chosen by judicial parlance for the culpable conduct which led to their incarceration.[11] *All* these persons comprise but a single and indivisible class of statutory offenders. The judiciary clearly is *powerless* to dichotomize them for imposition of a different calculation-of-confinement regime.

---

**9.** The terms of 21 O.S.Supp.1984 § 566, effective Nov. 1, 1984, provide:

"Unless otherwise provided for by law, *punishment for direct or indirect contempt* shall be by the imposition of a fine in a sum not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail not exceeding six (6) months, or by both, at the discretion of the court." [Emphasis supplied.]

**10.** *Fulreader v. State, supra* note 4 at 777.

**11.** "*It would be absurd to distinguish criminal [from] ... civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used.* * * *" *Walker v. McLain,* 768 F.2d 1181, 1183 [10th Cir.1985].